**PAL AIR INTERNATIONAL, INC., Plaintiff**

**v.**

**JAMES PORTER, CONSTANCE PORTER, and SAMOA AVIATION, INC., Defendants**

High Court of American Samoa
Trial Division

CA No. 70-95

November 1, 1996

Before RICHMOND, Associate Justice, AFUOLA, Associate Judge, and VAIVAO, Associate Justice.

Counsel:    For Plaintiff, Togiola T.A. Tulafono, James W. Hardesty, pro hac vice, and Edward A. McConwell, pro hac vice
For Defendant, Robert A. Dennison and Marshall L. Ashley

Opinion and Order:

### PROCEDURAL HISTORY

Originally this case arose from a discovery dispute in *Samoa Aviation, Inc. v. Robert G. Bendall, Pace Aviation, Ltd., and Pal Air International, Inc.*, CA No. 50-95. In a separate effort to gain access to documents which defendants in this action, James Porter ("James"), Constance Porter ("Constance"), and Samoa Aviation, Inc. ("Samoa Air"), were purportedly withholding, plaintiff Pal Air International, Inc. ("Pal Air")[1]

---

[1] Although Pal Air is the formal plaintiff in this action, Pal Air's owner, Robert G. Bendall ("Bendall"), was the sole owner, director and president of both Pal Air and Pace Aviation, Inc. at all times relevant to this action. Both companies were quite similar and seemed to perform overlapping functions on behalf of their owner. During the trial there was some issue

54

brought the present action to inspect those documents as a shareholder, rather than as an opposing litigant. Since both actions were related this court initially consolidated them. However, it later became apparent that the present action needed resolution prior to proceeding to trial in CA No. 50-95. The Court thus separated the cases and set the present action for trial. Plaintiff moved for summary judgment, which was denied on July 15, 1996. Trial on the merits began on September 5th and was concluded on September 6, 1996.

## THE ISSUE

As stated above, Pal Air brought this shareholder action to inspect documents which were being purportedly withheld in CA No. 50-95. Undisputedly, Pal Air was at one time a shareholder in Samoa Air. Indeed, the parties stipulated that as of November 28, 1988, Pal Air owned 25% of Samoa Air.[2]

The core issue, however, is the current ownership of the 25% interest which Pal Air once owned. Pal Air contends that it still owns these shares. James and Constance contend that they purchased the shares from Pal Air. Specifically, James and Constance contend that, in February 1992, they entered into an oral agreement in Reno, Nevada, with Bendall to purchase these shares. They assert that the oral agreement was consummated by the payment of $25,000 pursuant to that agreement.

## DISCUSSION

as to which company owned the shares, which company the oral contract at issue was with, and which company received payment for the shares. These distinctions, however, are unimportant. Both companies were corporate veils for Bendall. Under both American Samoa and Nevada law, the court may disregard the corporate fiction in circumstances such as those in this case. *See E.W. Truck & Equipment Co. v. Coulter*, 19 A.S.R.2d 61, 66 (Trial Div. 1991); *McCleary Cattle Co, v. Sewell*, 317 P.2d 957, 959 (Nev. 1957). We will overlook the fiction of separate corporate identities for purpose of this case.

[2] Bendall put these shares in the physical possession of the DuQuoin State Bank in Illinois, as part of a loan security arrangement, after Pal Air acquired ownership of them. Bendall testified that the loan or loans are currently paid in full, but the bank still has possession of the Samoa Air shares. He stated that he did not retake possession of the shares in anticipation of possible future credit transactions. We have in evidence only copies of the share certificates made in 1988.

The central question is whether there was indeed an oral agreement for the purchase of the Samoa Air stock from Pal Air. Both parties agree that James and Constance discussed with Bendall purchase by James and Constance of the Samoa Air stock owned by Pal Air. Bendall, however, testified that the discussion concerned a stock swap whereby James and Constance would purchase shares of Sierra Pacific Aviation, another corporation owned by Bendall, and trade some of these shares for the shares of Samoa Air. Bendall stated that this agreement, although discussed, was never consummated.[3] Pal Air does, however, admit that the James and Constance transferred $25,000 to Pace Aviation soon after the February meeting.

James and Constance testified that the oral agreement was for the purchase of Samoa Air stock and the subsequent payment of $25,000 to Pace Aviation, by Bendall's direction, consummated that agreement. In support of their contention, James and Constance produced copies of a wire transfer receipt for $25,000, issued on February 26, 1996.

Bendall does not dispute the receipt of this $25,000 wire transfer. Instead he testified that this money was not made pursuant to a stock purchase because such an agreement was never reached. Bendall claims that this money was simply credited to Samoa Air's account and later applied toward the purchase of an airplane engine.

Constance, however, produced copies of the checks which were used to purchase that airplane engine. Specifically, the engine was ordered on or about August 12, 1992 for $49,500. Prior to the order Samoa Air made a $20,000 down payment on the engine. This down payment was made by a check for $10,000 dated August, 1992 and a wire transfer for $10,000 dated August 7, 1992. Samoa Air agreed to pay the balance of roughly $30,000 in four monthly installments of $7,500.

---

[3] Sandy Cox ("Cox") also held 25% of Samoa Air's stock in 1988. Cox would have transferred his Samoa Air shares to Bendall or one of his corporations in exchange for Sierra Pacific stock, as part of the proposed Sierra Pacific transaction. However, since this transaction was never completed, Cox retained ownership of his Samoa Air shares.
Apparently, James and Constance learned that Cox still owned these shares after this action was filed and, on August 2, 1995, they purchased the Cox shares.

56

On September 8, 1992, Samoa Air made the first $7,500 payment. Samoa Air made the second $7,500 payment on October 7, 1992,[4] and a third payment of $5,000 on November 18, 1992.[5] The final installment was paid for with a portion of an insurance claim check. Thus, Samoa Air has, separately and apart from the February 26 wire transfer, accounted for the entire purchase price of the airplane engine.

We find the evidence presented by James, Constance and Samoa Air persuasive on this issue. Pal Air countered the assertion by James, Constance and Samoa Air that the $25,000 wire transfer was for the purchase of stock by contending that this money was applied to the purchase of the engine.[6] This contention is adequately rebutted by reliable evidence of separate payments for the airplane engine.

As discussed in our "Order Denying Motion for Summary Judgment," issued on July 15, 1996, under Nevada law an oral contract for the sale of securities can be enforced where "payment has been made." *Id.* at p.6 (*citing* Nev. Rev. Stat. § 104.8319(2)). We believe that James, Constance and Samoa Air have adequately shown that, pursuant to the oral agreement, the payment for the shares "has been made." Thus, under Nevada law we find that there was an enforceable oral contract for the sale of 25,000 shares of Samoa Air stock owned by Pal Air for the purchase price of $25,000, which was consummated when James and Constance paid this amount to Pace Aviation, as directed by Bendall.[7]

---

[4] This payment actually ended up being for $7,440 due to the fact that Constance failed to include the $60 processing fee with there check to the bank. Pal Air later wrote off this $60 shortfall.

[5] James A. Riske ("Riske") paid the $2,500 balance on this installment directly to Pal Air. Riske was also involved in Samoa Air stock transactions. *See* n.6 *infra.*

[6] Pal Air seemed to argue that, even if there was a valid oral agreement for the sale of the stock, the sale was not unanimously approved by Samoa Air's stockholders, as required by Samoa Air's original bylaws, and is therefore invalid. The sale restrictions in the bylaws were adopted for the stockholders' benefit. As such the stockholders may waive them. Here we believe that the stockholders' continual disregard of these sales restrictions effectively waived them, and Pal Air is estopped from now asserting this restriction. *See* 18A AM. JUR. 2D *Corporation* § 695.

[7] In yet another but separate transaction involving Samoa Air's stock, Riske testified regarding Bendall's pledge of two and one-half percent of outstanding Samoa Air shares as security for a loan of $7,500. When

Pal Air had the burden to prove, by a preponderance of the evidence, that it is a present shareholder in Samoa Air, with the attendant inspection rights of corporate records. Pal Air has failed to meet its burden.

ORDER

Judgment shall be entered in favor of Samoa Air, James and Constance, and against Pal Air.

Trial in CA No. 50-95 is scheduled on Tuesday, February 4, 1997, at 9:00 a.m.

It is so ordered.

Bendall defaulted on the loan, these shares presumably became Riske's property. James and Constance purchased these shares from Riske on June 25, 1995. The evidence does not clearly show which Samoa Air shares Bendall intended to pledge for the Riske loan. However, under our findings, Bendall did not own or control any Samoa Air shares to pledge on the date of the loan agreement, April 14, 1994. It appears, therefore, that James and Constance needlessly bought Samoa Air shares from Riske, at least for purposes of the issue before us.